ORIGINAL

1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Karin Kramer (Cal. Bar No. 87346)
2  karinkramer@quinnemanuel.com
   50 California Street, 22nd Floor
3  San Francisco, California 94111
   (415) 875-6600
4  (415) 875-6700 facsimile

Attorneys for Petitioners

FILED

MAR 22 2016

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

LB

CV 16 80068 MISC.

| | |
|---|---|
| RAYMOND A. MIRRA, JR., RAM CAPITAL GROUP, LLC, D/B/A RAM CONSULTING GROUP, LLC, RAM CAPITAL GROUP II, LLC, RAM REALTY HOLDINGS, LLC, JOSEPH A. TROILO, JR., BRUCE KOLLEDA, MARK A. KOVINSKY, JOSEPH J. TROPIANO, JR., DANIELLE STEWART, RENEE M. SIGLOCH, FREDERICK FORTE, VIRGINIA L. HALL, BARI KUO, and SHELLY DEMORA,<br><br>Petitioners,<br><br>v.<br><br>FARELLA BRAUN + MARTEL, LLP,<br><br>Respondent. | CASE NO.<br><br>**PETITIONERS MIRRA, ET AL.'S (THE RAM DEFENDANTS') NOTICE OF MOTION AND MOTION FOR TRANSFER OF MOTIONS: (1) TO COMPEL COMPLIANCE WITH SUBPOENA DUCES TECUM; AND (2) FOR SANCTIONS**<br><br>Date: TBD<br>Time: TBD<br>Place: Courtroom 10<br>Judge: Honorable Haywood Gilliam, Jr. |

Case No.
NOTICE OF MOTION AND MOTION FOR TRANSFER OF MOTIONS

## TABLE OF CONTENTS

                                                                                                          Page

NOTICE OF MOTION AND MOTION ................................................................................ 1
MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 1
INTRODUCTION .................................................................................................................. 1
ARGUMENT .......................................................................................................................... 4
   I.     Transfer Will Avoid Inconsistent Results ................................................................. 6
   II.    Transfer is in the Interests of Judicial Economy and Would "Avoid Disrupting the Issuing Court's Management of the Underlying Litigation" ................................... 8
   III.   A Transfer Would Impose No Cognizable Burden on Farella Braun ..................... 9
CONCLUSION .................................................................................................................... 11

# TABLE OF AUTHORITIES

**Page**

### Cases

*Agincourt Gaming LLC v. Zynga, Inc.*,
  No. 2:14-cv-0708-RFB-NJK, 2014 WL 4079555 (D.Nev. Aug. 15, 2014) .............. 5, 8, 10, 12

*Fed. Deposit Ins. Co. v. Axis Reins. Co.*,
  No. 13 Misc. 380, 2014 WL 260586 (S.D.N.Y. Jan. 23, 2014) ........................................ 5, 6, 7

*Fed. Trade Comm'n v. A+ Fin. Ctr., LLC*,
  No. 1:13-mc-50, 2013 WL 6388539 (S.D. Ohio Dec. 6, 2013) ............................................. 5, 7

*Handgards Inc. v. Johnson & Johnson*,
  413 F. Supp. 926 (N.D. Cal. 1976) ........................................................................................ 8

*Judicial Watch, Inc. v. Valle Del Sol, Inc.*,
  307 F.R.D. 30 (D.D.C. 2014) ..................................................................................... 7, 8, 10

*Melder v. State Farm Mut. Auto. Ins. Co.*,
  No. 1:08-cv-1274-RWS-JFK, 2008 WL 1899569 (N.D. Ga. Apr. 25, 2008) ...................... 10

*Redfish Key Villas Condo. Ass'n v. Amerisure Ins. Co.*,
  No. 2:13-cv-241-FtM-29CM, 2014 WL 407960 (M.D. Fla. Feb. 3, 2014) ......................... 10

*S.E.C. v. McNaul*,
  271 F.R.D. 661 (D. Kan. 2010) ............................................................................................. 8

*In re UBS Fin. Servs., Inc. of P.R. Secs. Litig.*
  113 F. Supp. 3d 286 (D.D.C. 2015) ....................................................................................... 5

*Wultz v. Bank of China, Ltd.*,
  304 F.R.D. 38 (D.D.C. 2014) ..................................................................................... 5, 11, 12

*XY, LLC v. Trans Ova Genetics, L.C.*,
  307 F.R.D. 10 (D.D.C. 2014) .............................................................................................. 10

### Statutes

Fed. R. Civ. P. 45 ................................................................................ 1, 4, 5, 6, 9, 11

Fed. R. Civ. P. 45(f) advisory committee's note (2013 amendments) ........................ 5, 6, 9, 11, 12

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on a date and time to be determined by the Court, before the Honorable Judge Haywood S. Gilliam, Jr. in Courtroom 10, Nineteenth Floor, United States District Court for the Northern District of California, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, California, Defendants Raymond A. Mirra, Jr., RAM Capital Group, LLC, d/b/a/ RAM Consulting Group, LLC, RAM Capital Group II, LLC, RAM Realty Holdings, LLC, Joseph A. Troilo, Jr., Bruce Kolleda, Mark A. Kovinsky, Joseph J. Tropiano, Jr., Danielle Stewart, Renee M. Sigloch, Frederick Forte, Virginia L. Hall, Bari Kuo, and Shelly Demora shall and hereby do move the Court pursuant to Federal Rule of Civil Procedure 45(f) for an order transferring the accompanying Motion to Compel and Motion for Sanctions to the District of Delaware, the court where the underlying action was initiated and is currently pending.

Defendants move based on this notice of motion and supporting memorandum of points and authorities, the concurrently filed declaration of Julia M. Beskin, accompanying Motion to Compel and Motion for Sanctions, and such other written or oral argument as Defendants may present to the Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

Petitioners/the RAM Defendants[1] respectfully submit this memorandum of points and authorities in support of their Motion to Transfer the simultaneously filed Motion to Compel and Motion for Sanctions to the District of Delaware. This motion is based on the grounds that "exceptional circumstances" support transfer to the Court where the underlying action commenced and is currently pending, and where the Court already has considered issues related to the same subpoena at the center of this motion.

## INTRODUCTION[2]

By this motion, the RAM Defendants respectfully request this Court transfer to the District of Delaware its Motions to Compel and for Sanctions, which arise out of the same subpoena which the Court in Delaware already has had an opportunity to consider. *See* Declaration of Julia M. Beskin ("Beskin Decl."), Ex. 1. The subpoena (the "Subpoena") relates to an action currently pending in the District of Delaware, captioned *The Hawk Mountain LLC, et al. v. RAM Capital Group, LLC, et al.*, C.A. No. 13-02083-SLR-SRF (the "RICO Action"), filed on December 23, 2013 by Plaintiffs Gigi Jordan ("Jordan"), the Hawk Mountain LLC, Kim Jordan, and Michelle Mitchell against the RAM Defendants pending in the District of Delaware. Jordan, who is serving an eighteen-year sentence for killing her eight year-old autistic son with a toxic overdose of pills, seeks to recover more than $225,000,000, based on an alleged intricate and complex set of facts styled as a RICO claim. In brief, she alleges that "beginning in 1997 and continuing through the [present]," the RAM Defendants formed a racketeering enterprise and "conspired together and abused their positions of trust [with Jordan] to systematically and unlawfully steal and divest

---

[1] Petitioners in this miscellaneous action are known as "the RAM Defendants" in the underlying action and include Raymond A. Mirra, Jr., RAM Capital Group, LLC, RAM Capital Group II, LLC, RAM Realty Holdings, LLC, Joseph A. Troilo, Jr., Bruce Kolleda, Mark A. Kovinsky, Joseph J. Tropiano, Jr. Danielle Stewart, Renee M. Sigloch, Bari Kuo, Frederick Forte, Virginia L. Hall, and Shelly Demora. Plaintiffs in the underlying action are The Hawk Mountain LLC, Gigi Jordan, Michelle E. Mitchell, and Kimberly Jordan. **For consistency, the parties will be referred to herein by their designations in the underlying action.**

[2] The factual references included herein are set forth in more detail in the accompanying Motion to Compel.

Plaintiffs out of hundreds of millions of dollars [through a] pattern of interrelated fraudulent schemes." Beskin Decl. Ex. 2, Second Amended Complaint ("SAC") ¶ 1. Central to Plaintiffs' claims is the allegation that the RAM Defendants defrauded Jordan in the negotiation and execution of a March 12, 2008 Separation and Distribution Agreement (the "SDA"), through which she and Defendant Mirra split their joint assets and business holdings. Beskin Decl. Ex. 3. Jordan was represented in this separation transaction by attorneys Mark Petersen, Brian Donnelly, and Benjamin Elliott of Farella Braun + Martel LLP ("Farella Braun"). The subpoena, issued over a year ago, sought documents from Farella Braun.

Because the SAC explicitly described otherwise privileged communications between Jordan and Farella Braun attorneys, Plaintiffs put Jordan's communications with her attorneys at issue in the litigation. As a result, *the parties agree* that Jordan has waived privilege for communications with her attorneys at Farella Braun relating to negotiations of the SDA and the General Release contained therein. *See* Beskin Decl. Ex. 11, Feb. 16, 2016 Tr. at 27:21-24 ("[W]e waived privilege for every word that Mark Petersen ever said to Ms. Jordan with regard to the SDA or anything that ever followed it or proceeded it.").

On March 3, 2015, the RAM Defendants served the Subpoena on Farella Braun. Beskin Decl. Ex. 1. Plaintiffs and the RAM Defendants agreed Farella Braun would produce documents to Plaintiffs first, to allow Plaintiffs to review the documents for privileged materials that pertained to other matters and therefore were outside the scope of the parties' agreed upon waiver. Beskin Decl. Ex. 8. Plaintiffs then would produce all documents to the RAM Defendants, redacting only for such privilege, and providing a privilege log for those documents. The parties' agreement was communicated to and understood by Farella Braun. Beskin Decl. Exs. 17, 18, 19.

District of Delaware Magistrate Judge Sherry R. Fallon, who is assigned to the underlying action, is familiar with both the Subpoena and issues of privilege waiver in the underlying action. In April 2015, Magistrate Fallon heard a privilege dispute between the parties regarding two of the twenty-five requests contained in the Subpoena. Beskin Decl. Ex. 10. This was one of nine discovery disputes Judge Fallon has heard so far in the litigation, two of which involved issues concerning privilege waivers.

On July 21, 2015, Farella Braun advised the RAM Defendants that it had produced all responsive documents to Plaintiffs. Beskin Decl. Ex. 19. Seven months later, and only as a result of a document production by another third party, it came to light that Farella Braun had *not* produced all responsive documents. Deficiencies in Farella Braun's production became apparent when the third party produced documents which should have been part of Farella Braun's production, but which Farella Braun had not produced. When pressed, Farella Braun admitted it had—of its own volition and in contravention of the parties' agreement and the Federal Rules of Civil Procedure—withheld over 8,000 documents; it claimed that it withheld 3,318 documents on the basis of attorney-client privilege, 3,498 documents on the basis of attorney work-product, and 1,400 documents which it deemed non-responsive (but which may have been responsive).[3] Beskin Decl. Ex. 24. Farella Braun had not informed either the Plaintiffs or the RAM Defendants of its unilateral decision to withhold documents, nor had it provided a privilege log that would have revealed it was doing so.

Farella Braun's discovery deficiencies have had a significant impact on the case. In the months before Farella Braun's conduct was inadvertently revealed by the third-party production, the litigation proceeded without important documents from this hidden collection. The parties took 17 depositions of witnesses for whom these documents are relevant and likely would have led to additional areas of inquiry. Further, the parties have been prevented from identifying additional third-parties who may be in possession of relevant documents and whose identities would have been revealed by the withheld documents. The RAM Defendants incurred the expense of flying to San Francisco to take what we now know were incomplete depositions of the Farella Braun attorneys regarding their representation of Jordan and the SDA, and the parties have engaged in significant motion practice based on a mutual understanding that Farella Braun's production completed the documentary record on issues relating to the SDA.

---

[3] In the weeks following this revelation, these numbers have fluctuated. At this time, Farella Braun has advised the parties that the number of documents withheld solely on the basis of work-product has changed to 1,848, and the number of potentially responsive documents that Farella Braun did not produce has increased to 10,978, including documents newly-identified from an expanded search. Beskin Decl. Ex. 20.

1 　　　　As a result of Farella Braun's conduct and its unwillingness to make appropriate
2 reparations, Defendants are now forced to move to compel and also to seek sanctions to restore
3 them, to the extent possible, to the position they would have been in had Farella Braun complied
4 with its discovery obligations. How their conduct has impacted the litigation, and what remedy
5 will fairly address the situation, will more easily be understood by the Court that has presided over
6 this litigation since 2013 and is already familiar with the subpoena at issue. It is for this reason
7 that Defendants move to transfer the Motion to Compel.

## ARGUMENT

　　　　A transfer of the RAM Defendants' Motion to Compel is appropriate under Federal Rule of Civil Procedure 45, which was recently amended to allow for the transfer of subpoena-related motions from the court where compliance is required to the court where the underlying action is pending. *See* Fed. R. Civ. P. 45(f). The Advisory Committee Note accompanying this recent amendment to Rule 45 provides that such transfer may be made when "exceptional circumstances" are present which outweigh any burden on the nonparty of having the dispute heard in a local forum. Fed. R. Civ. P. 45(f) advisory committee's note (2013 amendments). The party requesting the transfer bears the burden of showing that "such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion." *Id.*

　　　　Even before the amendment, a court had discretion to transfer subpoena-related motions to the court overseeing the underlying litigation. *See Fed. Trade Comm'n v. A+ Fin. Ctr., LLC*, No. 1:13-mc-50, 2013 WL 6388539, at *2 (S.D. Ohio Dec. 6, 2013) (collecting cases in which courts transferred subpoena-related motions); *see also Fed. Deposit Ins. Co. v. Axis Reins. Co.*, No. 13 Misc. 380, 2014 WL 260586, at *3 (S.D.N.Y. Jan. 23, 2014). Now, however, "the new Rule 45(f), and the comments thereto, clearly permit and encourage such action." *Id.*

　　　　determine if the issuing court is "'in a better position to rule on the . . . motion . . . due to [its] familiarity with the full scope of the issues involved as well as any implications the resolution of the motion will have on the underlying litigation.'" *See In re UBS Fin. Servs., Inc. of P.R. Secs. Litig.*, 113 F. Supp. 3d 286, 288 (D.D.C. 2015) (quoting *Wultz v. Bank of China, Ltd.*, 304 F.R.D. 38, 47 (D.D.C. 2014)). Among other things, courts have found exceptional circumstances

warranting transfer of subpoena-related motions when doing so promotes judicial economy and avoids the risk of inconsistent judgments. *See A+ Fin. Ctr.*, 2013 WL 6388539, at *3; *see also In re UBS*, 113 F. Supp. 3d at 288 (describing several other valid reasons for transfer, including: case complexity, procedural posture, and lengthy history of prior substantive proceedings); *Agincourt Gaming LLC v. Zynga, Inc.*, No. 2:14-cv-0708-RFB-NJK, 2014 WL 4079555, at *7 (D. Nev. Aug. 15, 2014). The Advisory Committee Note to Rule 45(f) embraces these factors, stating that "transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when the court has already ruled on issues presented by the motion." Fed. R. Civ. P. 45 advisory committee's note (2013 amendments).

As set forth in more detail in the accompanying Motion to Compel, the parties' dispute over the Subpoena revolves around the waiver of work-product as a result of both the allegations in the SAC and the failure of Farella Braun to log the withheld documents leading to them being hidden for seven months. As mentioned earlier, the issue of the scope of privilege regarding the Subpoena was brought to Judge Fallon once before, and it is highly likely to arise again. If both this Court and Judge Fallon consider privilege issues regarding the Subpoena, there is a risk of inconsistency, a problem which can be avoided by transferring the motion to compel and for sanctions.

Farella Braun has no compelling interest in having this Court hear the motion to compel. The only "interest" it has raised is "convenience," but in fact it already has local counsel in Delaware to litigate the motions, should the need arise, so there is no actual inconvenience to the Farella firm. The fact that it may incur some marginal additional cost for a hearing in Delaware is a problem of its own making and should not weigh in favor of either burdening this Court with becoming acquainted with the details of long-standing and complicated litigation involving many transactions over many years, or burdening the Delaware Court with the possibility of inconsistent interpretations of the scope of the Subpoena.

Accordingly, the relevant factors weigh in favor of transferring the Motions to Compel and for Sanctions to the District of Delaware.

## I. Transfer Will Avoid Inconsistent Results

The potential for inconsistent discovery rulings weighs in favor of transfer in this case. The issues raised by the accompanying Motion to Compel concern, in part, the scope of the privilege waiver flowing from the allegations in the complaint and defenses raised by Plaintiffs. This is an issue that Judge Fallon already has had before her and which may well recur over the course of the litigation. The risk that two courts will come to different decisions regarding the application and scope of waiver related to the Subpoena and the implications of that waiver is therefore palpable. *See, e.g., Judicial Watch, Inc. v. Valle Del Sol, Inc.*, 307 F.R.D. 30, 35 (D.D.C. 2014) (transferring the motion because the issue of whether the non-party was obligated to produce the documents being withheld on privilege grounds turned on whether the assertion of that privilege was valid, which was precisely the issue that the issuing court had already grappled with in the underlying litigation). In *Axis Reinsurance Co.*, the New York District Court found that transfer of a subpoena-related motion to Georgia was appropriate because "there is a very real possibility that the motions to compel filed in Georgia and New York could result in different and contradictory holdings." 2014 WL 260586, at *2. Likewise, in *A+ Financial Center*, district courts in both Kentucky and Ohio granted requests to transfer subpoena-related motions to Florida, where the underlying action was pending, because the Florida court was already considering a related petition. Because "the Florida Court's decisions would impact the motion before the Kentucky Court [as well as the Ohio Court]; and there was the potential for inconsistent rulings given the issues," transfer of the subpoena-related motions was warranted. 2013 WL 6388539, at *3.

To take one example, it is possible that *Plaintiffs* will dispute any ruling on this issue that they deem unfavorable to them, as they have done in the past. They already have raised disputes on other privilege issues with the District of Delaware related to this same Subpoena. Judge Fallon heard a dispute between the parties in April 2015 where Plaintiffs contested two requests in the Subpoena based on a claim of privilege. *See* Beskin Decl. Ex. 10. If this Court finds a work-product waiver, a similar dispute between the parties pertaining to the application of that waiver could arise. Because such a dispute is between the parties and does not involve the third-party

subpoena to Farella Braun, that dispute will be litigated in the District of Delaware, thus requiring both Courts to address the same issue and potentially reach different conclusions.

It is undisputed that Jordan waived attorney-client privilege for communications with Farella Braun relating to the SDA; the Motion to Compel addresses Farella Braun's claim of work-product protection relating to the same subject matter--that is, the SDA. The extent to which work product has been waived because of Plaintiffs' allegations and defenses in the underlying action will be key to resolution of the Motion. *See S.E.C. v. McNaul*, 271 F.R.D. 661, 667 (D. Kan. 2010) (holding that because a law firm's former client had placed attorney-client communications at issue, he had waived privilege and therefore the law firm could not independently assert work-product privilege). As mentioned, Judge Fallon already has working knowledge of the attorney-client waiver issues related to the Subpoena and is familiar with the case generally and, respectfully, is in a better position to understand the issues addressed in the Motion to Compel and able to issue rulings in line with her understanding of the case and the impact of these issues on the litigation. *See Agincourt Gaming*, 2014 WL 4079555, at *7 ("[S]ome overlapping discovery issues have already been briefed in the District of Delaware, thus creating the possibility of inconsistent rulings."); *Judicial Watch*, 307 F.R.D. at 35-36 ("The fact that the issuing court is addressing privilege issues raised by non-parties in discovery only underscores that court's familiarity with the privilege issues being raised and confirms the need for transfer to ensure consistent rulings."). It is neither convenient nor prudent for two different courts to decide these interlocking disputes. And, as is apparent, the interconnectedness of these two privileges creates the risk of inconsistent rulings.

The circumstances present here—two courts addressing related issues on the same subpoena—are within the scope of "exceptional circumstances" envisioned by Rule 45 which warrant transfer to the issuing court. Fed. R. Civ. P. 45(f) advisory committee's note (2013 amendments) ("In some circumstances, however, transfer may be warranted, . . . as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts."). Accordingly, to avoid the risk of inconsistent judgments, this Court

should transfer the instant Motion to Compel to the District of Delaware in order that the same court can rule on the scope of both related waivers.

II. **Transfer is in the Interests of Judicial Economy and Would "Avoid Disrupting the Issuing Court's Management of the Underlying Litigation"**

Transfer is also warranted both to promote judicial economy and avoid disrupting Judge Fallon's management of the underlying litigation. Judge Fallon already is well-acquainted with the facts and complexities of the underlying action. This Court would be forced to devote significant time and resources to familiarize itself with the RICO Action before deciding the accompanying substantive motions and to determine what measures must be taken to restore the litigation to the state it would have been in had Farella Braun's discovery derelictions not occurred. And, because any decision on these motions will impact the underlying litigation, Judge Fallon then will need to familiarize herself with the issues regardless of whether the motions are before her. This scenario is inefficient for both courts and disruptive of Judge Fallon's management of the underlying action. *See Redfish Key Villas Condo. Ass'n v. Amerisure Ins. Co.*, No. 2:13-cv-241-FtM-29CM, 2014 WL 407960, at *2 n.1 (M.D. Fla. Feb. 3, 2014) (holding that it is appropriate for the court issuing the subpoena to hear motions arising from the subpoena where doing so is "in the interest of the efficient adjudication of [the] case within the deadlines imposed by [the issuing] Court"); *see also Melder v. State Farm Mut. Auto. Ins. Co.*, No. 1:08-cv-1274-RWS-JFK, 2008 WL 1899569, at *5 (N.D. Ga. Apr. 25, 2008) ("The complex nature of the underlying litigation and the disputes involving discovery weighs heavily in favor of transferring the motion to quash to the forum court . . . which is much more familiar with this complex case and its lengthy history.").

The fact that the Delaware court already has decided many discovery disputes strongly supports transferring the pending dispute to that court as well because it would contribute to the efficient management of the case and therefore promote judicial economy. *See Judicial Watch*, 307 F.R.D. at 35 (holding that transfer was warranted in such a situation because the issuing court

was therefore in a far better position to evaluate the relevance of and necessity for the documents demanded by the subpoena); *XY, LLC v. Trans Ova Genetics, L.C.*, 307 F.R.D. 10, 12 (D.D.C. 2014) (finding exceptional circumstances where the issuing court "has already supervised substantial discovery and begun preparations for trial"); *Agincourt Gaming*, 2014 WL 4079555, at *7. As discussed, Judge Fallon has so far heard and ruled upon nine discovery disputes in the underlying litigation. Defendants submit that, in part because of this history and the knowledge of the case she has gained from presiding over those disputes, Judge Fallon is in the best position to hear the instant dispute as well. *See Judicial Watch*, 307 F.R.D. at 35.

Finally, the underlying action is a complex litigation dealing with many varied allegations of fraud. There are currently two actions before Judge Fallon, one a RICO action and the other a complex fraud complaint[4]. Courts in similar circumstances have found that the issuing court is in a better position to hear the subpoena-related dispute. *See Wultz*, 304 F.R.D. at 46 ("Due to the highly complex and intricate nature of the underlying litigation, Judge Scheindlin is in a better position to rule on the intervenors' motion to quash or modify the subpoena due to her familiarity with the full scope of issues involved as well as any implications the resolution of the motion will have on the underlying litigation. Any ruling by this Court will inevitably disrupt Judge Scheindlin's management of the two highly complex actions currently pending in her court . . . ."). Transfer is thus warranted in order to promote judicial economy and to prevent disruption of Judge Fallon's management of the underlying actions.

### III. A Transfer Would Impose No Cognizable Burden on Farella Braun

The only reason Farella Braun has cited to the RAM Defendants for requiring this matter to be heard in the Northern District of California is convenience to itself. This is not a cognizable reason to force this Court to hear this dispute, and certainly does not outweigh the burdens that would be imposed on the Delaware court and the parties from requiring this dispute to be heard

---

[4] The fraud action is captioned *Gigi Jordan v. Raymond A. Mirra, et al.*, No. 1:14-cv-01485-SLR-SRF (D. Del.).

1. out of context. The Advisory Committee Note to the amended Rule 45 cautions that "[t]he prime
2. concern should be avoiding burdens on local nonparties subject to subpoenas." Presumably, the
3. burden the Rule is concerned with is the cost and distraction imposed on uninvolved third parties
4. who find themselves subject to subpoenas in matters that otherwise have no bearing on them.
5. Those are not the circumstances here. The "non-party" in this instance is a law firm who formerly
6. represented Plaintiff Jordan on the very matter at the heart of the RICO Action and failed in the
7. same kind of basic discovery obligations it presumably performs for its clients every day. It is
8. doubtful that a decision that this matter should not be heard in California is the kind of "burden"
9. the Rule is seeking to avoid because "[i]t is only the rare and extreme circumstance in which
10. litigation costs result in prejudice." *Wultz*, 304 F.R.D. at 45 (transferring a motion to the
11. jurisdiction where the underlying litigation was pending because the cost that may be incurred to
12. prosecute the motion in the court of compliance was *de minimus*). Courts have found that there is
13. no burden imposed merely because the requested documents are located in the district of the court
14. of compliance, or because the non-party might have to travel cross-country to argue the motion.
15. *See Agincourt Gaming*, 2014 WL 4079555, at *8 (holding that these reasons were unpersuasive
16. and did not warrant keeping the motion in the court of compliance).

17. Here, there would be no undue burden imposed on Farella Braun if it were made to litigate
18. these issues in the District of Delaware. Even if a court appearance should be necessary, Farella
19. Braun has retained local counsel in the District of Delaware for assistance in litigating the instant
20. issues, and travel would therefore be unnecessary. *See Agincourt Gaming*, 2014 WL 4079555, at
21. *8 ("Such travel is far from a foregone conclusion and the Advisory Committee Notes provide
22. guidance as to how to minimize such burden by, *inter alia*, encouraging transferee courts to allow
23. appearances to be made telephonically in the event that a hearing is deemed necessary. At this
24. point, it is not even clear that the District of Delaware would hold a hearing on the motion, let
25. alone that it would require personal attendance at any such hearing. To the extent there may be
26. some additional travel costs imposed due to a transfer, they appear at this point to be speculative
27. and not of a sufficient amount to outweigh the importance of advancing judicial economy and
28. avoiding inconsistent rulings.").

The RAM Defendants respectfully submit that on this record, and given the relative hardships to the Courts and the parties, transfer is warranted.

## CONCLUSION

For the foregoing reasons, the RAM Defendants respectfully request that this Court transfer the pending Motion to Compel and the Motion for Sanctions to the issuing Court in the District of Delaware.

Dated: March 22, 2016

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By /s/ Karin Kramer
Karin Kramer (Cal. Bar No. 87346)
karinkramer@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
(415) 875-6600
(415) 875-6700 facsimile

*Attorneys for Petitioners/the RAM Defendants*