UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| RAYMOND A. MIRRA, et al., | Case No. 3:16-mc-80068-LB |
| Plaintiffs, | |
| v. | **ORDER** |
| FARELLA BRAUN + MARTEL, LLP, | Re: ECF Nos. 3, 4, and 14 |
| Defendant. | |

### INTRODUCTION

In a civil RICO case pending in the District of Delaware, one of the plaintiffs is Gigi Jordan. *See The Hawk Mountain Capital Group, LLC v. RAM Capital Group et al.*, Case No. 1:13-cv-02083-SLR-SRF (D. Del.) She claims in the Delaware lawsuit that the defendants there (including her former husband and business partner Raymond Mirra) defrauded her of hundreds of millions of dollars through a series of schemes, including lying to her during her negotiation of a separation agreement with Mr. Mirra so that she would give up her right to assets.[1] Farella Braun + Martel LLP represented Ms. Jordan during the negotiation[2] and in other matters.

---

[1] Second Amended Complaint ("SAC") — ECF No. 14-3, ¶¶ 1-15. Citations are to the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the tops of the documents.

[2] *Id.* ¶ 294.

ORDER (No. 3:16-mc-80068-LB)\

The defendants in the Delaware case (collectively, the RAM defendants) issued a third-party subpoena to Farella for documents relating to the negotiation of the separation agreement.[3] Farella made two productions in April 2015. In February 2016, the RAM defendants notified Farella that a subpoena to a separate third party revealed that Farella had not produced one email, a portion of another email, and emails from a specific email address.[4] Farella then made a new production (described below).

On March 22, 2016, the RAM defendants — who are the petitioners here — moved to compel Farella's compliance with the subpoena, asked for sanctions for Farella's non-compliance, and moved to transfer both motions to the District of Delaware.[5] The parties consented to the undersigned's jurisdiction to decide the dispute.[6] The court held a hearing on May 5, 2016.[7] The court denies the motions. Farella produced all documents through the parties' agreed-upon process for producing subpoenaed attorney material, which moots the motion to compel and by extension the motion to transfer it. The court finds no sanctionable conduct and denies the motion for sanctions (and the motion to transfer it).

**STATEMENT**

**1. The subpoena and the April 2015 productions**

The petitioners issued their third-party subpoena to Farella in March 2015.[8] Among other things, it requests "documents and communications" between Farella and Ms. Jordan or Farella and other persons (including the RAM defendants) relating to "documents and communications" described in specified paragraphs in the SAC or related to the negotiation of the separation agreement and the mutual release executed by Ms. Jordan and Mr. Mirra.[9] The requests obviously request information that might be privileged or work product.

---

[3] Subpoena — ECF No. 14-2 (referencing paragraph numbers in the SAC).
[4] Ex. 7 to Geiger Decl. —ECF No. 20-7.
[5] Motions — ECF Nos. 3, 4, and 14.
[6] Consents — ECF Nos. 39, 41, 43, 44, and 45.
[7] Minute Order — ECF No. 52.
[8] Subpoena — ECF No. 14-2.
[9] *See, e.g., id.* at 11.

On March 18, 2015, Farella timely objected to the requests to the extent that they sought documents protected by the attorney-client privilege, the work-product doctrine, or other statutory or common-law privilege.[10] Farella collected documents and made an initial production on April 3, 2015, withholding attorney-client privileged documents. The petitioners' counsel acknowledged that Farella would withhold privileged documents until Ms. Jordan waived privilege or a court ordered production. Farella responded that "it is Ms. Jordan's determination whether the privilege is waived and not ours. As soon as Plaintiffs confirm the privilege has been waived, we will begin production of privileged documents." It also said, "Because the privilege issue is unresolved, and our withholding of the documents may only be temporary, we do not think there is any basis for a privilege log at this time."[11]

Meanwhile, in the Delaware lawsuit, the parties raised their discovery dispute over the scope of Ms. Jordan's waiver of the attorney-client privilege.[12] According to the RAM defendants, the parties did not dispute that Ms. Jordan waived privilege for documents pleaded in the SAC and disputed only whether retention agreements and billing records were privileged.[13] The letter did not refer to work product. At the discovery hearing, the plaintiffs agreed that that the privilege had been waived; no one mentioned work product.[14] The Delaware court remarked on the plaintiffs' proposed solution of submitting privileged documents first to the plaintiffs for a privilege review; the defendants basically agreed to the proposal.[15] The Delaware court thereafter entered an order: "Whereas the parties have not submitted a form of order to court regarding the discovery dispute discussed during the 4/6/2015 discovery dispute teleconference, IT IS HEREBY ORDERED that the court will consider the discovery dispute resolved by the parties."[16]

---

[10] Ex. 1 to Geiger Decl., ECF No. 20-1.

[11] April 2015 emails — ECF No. 14-18 at 1-2.

[12] *See* Ram Defendants' letter brief — ECF No. 20-2.

[13] *Id.* at 3.

[14] 4/6/2016 Transcript — ECF No. 14-11.

[15] *Id.* at 11-12 (Transcript pp. 10-11).

[16] Case No. 1:13-cv-02083-SLR-SRF — ECF docket entry 4/13/2015.

ORDER (No. 3:16-mc-80068-LB)   3

On April 6, 2015, the Delaware plaintiffs' counsel advised Farella that the Delaware parties agreed to produce Farella's documents, including privileged documents, to the plaintiffs' counsel. That day, Farella confirmed that it would produce the responsive documents, including attorney-client privileged documents, but said that it "would not be providing you with our work product." Ms. Jordan's counsel responded with a summary of the Delaware parties' agreed-upon process for production of documents, including "all future compliance with the subpoena." He specified that "***No additional documents*** are to be produced directly to the defendants, irrespective of Farella[]'s assessment of whether or not any or more documents is or is not privileged." [17]

On April 22, 2016, Farella produced documents to the Delaware plaintiffs and advised the RAM defendants that "[i]t is our understanding that Plaintiffs will now review these documents to determine if privilege has been waived and will then produce documents to Defendants."[18] It identified approximately 4,700 documents as responsive, produced 2,847 documents (including attorney-client privileged documents), and identified and withheld 1,848 of the responsive documents as its attorney work product.[19]

**2. The 2016 production**

On February 23, 2016, the RAM defendants notified Farella that a subpoena to a separate third party revealed that Farella had not produced one email, a portion of another email, and emails from a specific email address.[20] From February 28, 2016 through March 10, 2016, Farella supplemented its productions.[21]

First, it produced to the Delaware plaintiffs all documents that it collected in 2015 (meaning, it produced documents it had deemed non-responsive) except for its attorney work product.[22]

---

[17] 4/6/2015 Email — ECF No. 20-5 at 1-2 (bolding in the original).

[18] Letter — ECF No. 14-19.

[19] 3/10/2016 Email, Ex. 20 to Beskin Decl. — ECF No. 14-21.

[20] Ex. 7 to Geiger Decl. — ECF No. 20-7.

[21] 3/10/2016 Email — ECF No. 14-21.

[22] *Id.*

Second, it ran new searches for all matters relating to its representation of Ms. Jordan, using new search terms provided by the petitioners' counsel and significantly expanded the date range for its search beyond the date range that the parties agreed to in 2015. This resulted in the production to the Delaware plaintiffs' counsel — the agreed-upon process in the Delaware litigation — of approximately 4,000 documents.[23]

Third, it identified that it had inadvertently failed to manually search the email files from one Farella attorney (Mark Petersen) and then searched his computer for documents not collected in 2014. This resulted in a production of approximately 5,000 new documents.[24]

Fourth, it reviewed its withheld work product (approximately 5,300 documents), produced ordinary work product, and withheld 228 emails with their attachments (for a total of 537 documents) as opinion work product.[25] Farella says that, except for a handful of documents that are not responsive (such as internal firm-administration forms), it "believes that . . . all of the attachments to the 228 emails had already been produced."[26] It produced a privilege log of the emails on March 25, 2016.[27] (On March 7, 2016, the RAM defendants asserted that Farella waived its right to assert work-product protection because it never provided a privilege log in 2015.[28])

Farella also agreed to make its attorneys available in New York at Farella's expense for further depositions and agreed (at the petitioners' request) to produce a Rule 30(b)(6) deponent on its document collection and production.[29]

### 3. The motions and Farella's subsequent production of all work product

The RAM defendants (the petitioners here) filed the motion to compel in March 2016. Given Farella's productions at that point, at issue were the 228 emails and attachments (537 documents in all) designated as opinion work product. The petitioners' primary argument was that Ms. Jordan

---

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] Opposition to Motion to Compel — ECF No. 17 at 9.

[27] Exs. 8 & 9 to Geiger Decl. — ECF Nos. 20-8 and 20-9.

[28] *See* Ex. 13 to Geiger Decl. — ECF No. 20-13.

[29] *Id.* Exs. 10 through 12 — ECF Nos. 20-10 through 20-12.

ORDER (No. 3:16-mc-80068-LB)   5

1  put Farella's advice and opinion at issue in the Delaware litigation and thus waived any work-
2  product protection. A second argument was that Farella waived work-product protection by not
3  providing a privilege log in 2015.[30] The petitioners' counsel also served Farella with two new
4  third-party subpoenas in two defamation lawsuits that Mr. Mirra filed against Ms. Jordan in the
5  Southern District of New York: *Mirra v. Jordan*, Case No. 13-cv-00419-AT, and *Mirra v. Jordan*,
6  Case No. 14-cv-04100-AT.[31] Because the subpoenas called for attorney-client privileged and
7  work-product documents, Farella objected; the parties then conferred by telephone on March 28,
8  2016.[32] During the call, Farella learned that Ms. Jordan's counsel (also the Delaware plaintiffs'
9  counsel) took the position that Farella had no independent work-product protection and that
10 Farella should produce all responsive documents to him for a privilege review and possible
11 protection to the RAM defendants (the petitioners here).[33] After researching the issue, Farella
12 ultimately decided that the question of whether Ms. Jordan waived work-product protection is a
13 dispute (if at all) between Ms. Jordan and the RAM defendants and that Ms. Jordan could assert
14 protection (and the parties could address waiver) in the Delaware lawsuit.[34] It notified the parties
15 that it would produce the 228 emails and attachments to the Delaware plaintiffs pursuant to the
16 Delaware parties' agreed-upon process.[35] It produced them on March 30, 2016.[36] It asked the
17 petitioners to withdraw the motion to compel because it was moot, and they refused.[37]

---

[30] Motion to Compel — ECF No. 14 at 15-22.
[31] Woodruff Decl. — ECF No. 19, ¶¶ 1-2.
[32] *Id.* ¶¶ 3-4.
[33] *Id.* ¶¶ 5-6.
[34] *Id.* ¶ 7; *see* Opposition to Motion to Compel — ECF No. 17 at 11.
[35] Woodruff Decl. ¶ 8; Ex. 14 to Geiger Decl. — ECF No. 20-14.
[36] Woodruff Decl. ¶ 9.
[37] Opposition — ECF No. 17 at 11.

ORDER (No. 3:16-mc-80068-LB)            6

# ANALYSIS

## 1. The motion to compel

The documents at issue are the 228 emails and attachments that Farella withheld initially as opinion work product. With Ms. Jordan's assent, in March 2016, Farella produced all withheld documents to the plaintiffs' counsel in the Delaware litigation. This is the Delaware parties' agreed-upon process for any productions from Farella. The motion to compel is moot.

The petitioners — who are the Delaware defendants — nonetheless argue in their reply that the motion to compel is not moot because Farella and Ms. Jordan waived work-product protection, and the Delaware defendants thus "seek production of the documents directly to them."[38] But they did not request this relief in their motion or proposed order. The proposed order says only that "Farella [] must produce all responsive documents that it has characterized as opinion work product . . . within three days of this order."[39] The motion does not discuss production directly to the RAM defendants and references only the defendants' demand to Farella on February 29, 2016 that it "produce all potentially responsive documents to Plaintiffs [in the Delaware litigation] within one week so that Plaintiffs could review the documents for privilege and produce them to Defendants, as required by the original agreement of the parties and Farella [] reached in spring of 2015."[40] That is basically what Farella did.

Moreover, if Ms. Jordan waived her work-product protection, the best forum to decide the issue is in Delaware. That also is the forum to address whether it is appropriate to vary from the Delaware parties' agreed-upon process for producing potentially protected information to the plaintiffs' counsel, especially because they settled on the protocol with the assistance of the Delaware magistrate judge. The petitioners essentially do not disagree: it is the relief that they demanded in their motion to transfer the motion to compel. And it makes practical sense. Ms. Jordan's counsel represented at the May 5 hearing that he would complete the production to the

---

[38] Reply — ECF No. 26 at 4.

[39] Proposed Order — ECF No. 14-29.

[40] Motion to Compel — ECF No. 14 at 14:6-10 (citing 2/27/2016 and 3/8/2016 correspondence at ECF Nos. 14-26 and 14-27).

RAM defendants — with a privilege log — within approximately four days. When that happens, the withheld documents will be identified, and disputes about them can be raised, in Delaware.

**2.  Motion for Sanctions**

If a third party fails to comply with a subpoena, the ordinary remedy is to seek an order requiring compliance and then seek contempt sanctions for continued non-compliance. *See* Fed. R. Civ. P. 45(g); *Pennwalt Corp. v. Durand-Wayland, Inc.*, 708 F.2d 492, 494 (9th Cir. 1983). The petitioners did not seek relief under Rule 45(g) and instead ask the court to sanction Farella under its inherent authority. (That, at least, is the court's view of their motion.) They argue that Farella's bad faith is demonstrated by 1) its deliberate withholding of responsive documents, 2) its 2015 representation that it produced all documents it located, 3) its failure to advise the RAM defendants that it was withholding work product, and 4) its failure to provide a privilege log in 2015.[41]

A court may impose sanctions under its inherent power if it finds "bad faith, or conduct tantamount to bad faith," such as recklessness "combined with an additional factor such as frivolousness, harassment, or an improper purpose." *See Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001). The court finds no sanctionable conduct.

First, at least in the reply (filed after the document production was complete), the petitioners do not argue that the late production derived from Mr. Peterson's emails was in bad faith. It was an oversight that Farella corrected as soon as it learned of it.

Second, part of the production is attributable to a broader search that Farella conducted at the petitioners' request. All of this likely duplicates at least in part earlier productions. Farella quickly produced its ordinary work product and then produced its opinion work product after the plaintiffs agreed that it could. The Delaware plaintiffs will produce documents and a privilege log for withheld documents within days. The Delaware plaintiffs concede waiver of the attorney-client privilege about the events in the SAC and the negotiation of the separation agreement; presumably their production on these points will be complete. Whether Ms. Jordan put Farella's advice and

---

[41] Reply Brief — ECF No. 26 at 11-17.

ORDER (No. 3:16-mc-80068-LB)                8

opinions at issue in the Delaware litigation, and thus waived any work-product protection, is a discrete legal issue that can be addressed readily in Delaware. Farella will fly its lawyers to New York for mop-up depositions, if they are necessary. These points are not relevant to bad faith, but they dilute the petitioners' argument that Farella has derailed the Delaware litigation.

The court denies the motion for sanctions.

### 3. Motion to transfer

Because Farella has produced all documents, the motion to compel is moot, and there is nothing that the court can transfer. The parties in the Delaware litigation remain free to raise any disputes about discovery there. The court's decision gives the petitioners what they demand: a decision in the Delaware court about any waiver of work-product protection. It avoids what the petitioners fear: inconsistent decisions in two forums. Moreover, by providing all documents, Farella effectively removed itself from the dispute about work-product protection. There can be no argument that Farella's presence in Delaware is necessary to resolve discovery disputes between the plaintiffs and the defendants there.

The petitioners' main argument in the reply brief is that because the motion to compel is not moot, it makes sense to transfer it to Delaware under Rule 45(f) and then transfer the related motion for sanctions.[42] That might be true, but the court holds that the motion to compel is moot. Any decision to sanction is within the court's inherent authority; absent a basis for transfer, the motion for sanctions is properly resolved here.

The court also discerns no special economy to transferring the motions to the District of Delaware. Neither motion requires a deep understanding of the underlying litigation, especially given that the court's ruling gives the petitioners what they want: resolution of the waiver issue in the Delaware litigation. Also, the court is able to assess bad faith (or more accurately, the lack of bad faith) easily from the record.

---

[42] Reply — ECF No. 27 at 7-8.

ORDER (No. 3:16-mc-80068-LB) 9

## CONCLUSION

The court denies the motion to transfer, the motion to compel, and the motion for sanctions. This disposes of ECF Nos. 3, 4, and 14.

**IT IS SO ORDERED.**

Dated: May 6, 2016

_____
LAUREL BEELER
United States Magistrate Judge